CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

AUG - 9 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LATRON DUPREE BROWN, ) | Civil Action No. 7:14-cv-00576 |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| ALBEMARLE COUNTY POLICE ) | |
| DEPARTMENT, et al., ) | By: Hon. Jackson L. Kiser |
| Defendants. ) | Senior United States District Judge |

Latron Dupree Brown, a Virginia inmate proceeding pro se, filed a complaint pursuant to 42 U.S.C. § 1983 against the Albemarle County Police Department and local police officers associated with the Jefferson Area Drug Enforcement Task Force. Plaintiff alleged, inter alia, that the police officers' use of excessive force and denial of medical assistance violated his federal rights. By a prior memorandum opinion and order, I granted in part and denied in part defendants' motions to dismiss and ordered the current defendants – police officers Johnson, McKay, Coffin, Suitz, Frazier, Hatter, Wormley, Jones, McCall, and Brake – to file motions for summary judgment. These motions have been filed, and Plaintiff responded, making the matter ripe for disposition. After reviewing the record, I grant in part and deny in part defendants' motions for summary judgment, and the excessive force claim against defendant Johnson must be resolved by trial.

I.
A.

Plaintiff alleges the following facts as his remaining two claims:

> On [December 19, 2013,] . . . I was pulled out of the vehicle I was inside after Sgt[.] Johnson busted the driver's side window out with his handgun. I was pulled to the ground then handcuffed[.] . . . I layed [sic] face down posing no threat to Officers or resistance[.] Dell Johnson started twisting my wrist until it broke . . . .

> Tavis Coffin ordered Officer McCall to tase me two times in the back while I layed face down handcuffed without resistance[,] posing no threat[, and] moving in pain from my wrist being broken. An ambulance arrived[.] Dell Johnson, Jon Seitz, Sgt[.] Brake[,] Officer McCall, Mark Jones, Wormley, [and] Tavis Coffin denied me medical treatment.

Notably, Plaintiff does not give evidence of when defendant Johnson allegedly broke his wrist during the arrest.

### B.

Video from Officer McCall's police-cruiser dashcam was filed in support of a motion for summary judgment.[1] The video shows Officer McCall driving to a busy intersection controlled by a traffic light where Plaintiff stopped his car in a line of traffic. Once the police cruiser approaches Plaintiff's car, Detective Jones, who wore plain-clothes, pointed a pistol at Plaintiff inches from the closed driver's window. Detective Jones had jumped out of a black, unmarked SUV, and an unmarked black sedan had pulled across the front of Plaintiff's car.

After holding the pistol at Plaintiff's face for about three seconds, Detective Jones tried to smash in the driver's window, but Plaintiff reversed his car for about five feet as Detective Jones placed the muzzle of the pistol against the driver's window. Officer McCall, who wore a uniform, ran to the car and smashed the driver's window with a baton. At that moment, Detective Coffin, who wore a jacket reading "POLICE" in large white letters, and Detective Johnson, another officer who wore plain clothes and a vest displaying a police badge and "POLICE" written in smaller white letters, joined Detective Jones and Officer McCall at the driver's door.[2] Although just out of the camera's view, it appears the four officers at the driver's

---

[1] Defendants also filed an audio recording from a jail during which Plaintiff admits "bucking" during the arrest. This recorded statement is consistent with Plaintiff's movements when officers carried him to a police van, and I decline defendants' invitation to infer that the statement warrants granting defendants' motions.

[2] Detective Seitz stood approximately four feet behind the other officers.

2

door negotiated with Plaintiff or tried to pull him out of the car, but the viewer can hear the officers repeatedly ordering Plaintiff to not move his hands. Forty seconds elapsed between when the driver's window was smashed and Detective Jones removed Plaintiff from the car.

Detective Jones forced Plaintiff to the ground just in front of the bumper of Officer McCall's car and about five feet from the driver's door of Plaintiff's car. Officer McCall immediately helped Detective Jones secure Plaintiff on the ground. The video shows the heads, shoulders, and backs of the officers in front of the bumper, but the viewer cannot see Plaintiff due to the angle of the dashcam.

Within eight seconds of Plaintiff hitting the ground, Officer McCall unholstered his Taser while approximately four other officers skirmished with Plaintiff on the ground.[3] Detective Coffin shouted, "Taser! Taser! Taser!" A second later, Officer McCall deployed the Taser, Plaintiff began screaming, and an officer shouts, "Give me your arm!" After about thirty seconds, the officers stop skirmishing on top of Plaintiff. Detective Coffin secured leg irons to Plaintiff's legs as Plaintiff began to scream. Detectives Seitz and Jones returned to their SUV, drove away, and did not return.

Plaintiff screamed intermittently for the next few minutes until the officers on top of Plaintiff do something out of the dashcam's view. Plaintiff began screaming again, and the officers again skirmished on top of Plaintiff. About a minute later, Officer McCall removed Plaintiff's belt, Plaintiff and the officers talked for several minutes until Plaintiff screamed again, and the parties talked for several more minutes. Plaintiff resumed screaming for a little more than a minute.

---

[3] Again, the video does not show any of Plaintiff's movements, if any.

3

About four minutes later, Detective Coffin stood Plaintiff up, and the officers and Plaintiff moved completely out of view. The officers told Plaintiff to sit on the roadway, and Plaintiff screamed again while an officer shouted, "Stop resisting!"

A police van arrived about a minute later. Detective Wormley, Detective Johnson, Detective Coffin, and Officer McCall carried Plaintiff, who was bucking, flailing, and screaming, into the back of the police van. Throughout the duration of the traffic stop, traffic continued in the lanes surrounding Plaintiff and the officers.

### C.

Defendants filed multiple affidavits in support of their motions for summary judgment. As a whole, the affidavits allege that Plaintiff was combative and resisted all of the officer's attempts to secure him in handcuffs and in the police van.

Detective Wormley explains that he was at the passenger door of Plaintiff's car during the officers' initial contact with him. As soon as Detective Wormley was able to open the passenger door, Plaintiff began reaching for his rear waistband with his right hand so Detective Wormley used his right foot to pin Plaintiff's hand in place to prevent him from reaching whatever was in his waistband. Detective Wormley jumped into the car to secure Plaintiff's right arm before Detective Jones pulled Plaintiff from the car.

Even while pinned to the ground, Plaintiff continued to reach for his waistband despite the officers' attempts to apply handcuffs. The officers were able to put handcuffs on Plaintiff once the Taser was used, but Plaintiff was able to pull his hand mostly out of a handcuff. A different set of handcuffs were applied, and a search of Plaintiff's waistband revealed a clear plastic bag of crack cocaine.

4

An officer had called for an ambulance about five minutes after the traffic stop began, and it parked at a gas station next to the arrest scene about four minutes later. The police van drove Plaintiff to the ambulance for a medical assessment after he was secured inside. When the van doors were opened for the medical assessment, Sgt. Brake saw Plaintiff struggling to get out of his restraints. Based on this observation and Plaintiff's behavior during the arrest, Sgt. Brake determined that Plaintiff posed an unacceptable a risk to ambulance staff. Consequently, Sgt. Brake permitted the police van to take Plaintiff immediately to the Albemarle-Charlottesville Regional Jail ("Jail"). Defendants explain they believed that the Jail's trained medical staff would examine Plaintiff upon his arrival and would be able to address any apparent medical need.

The Jail's medical records reflect that Plaintiff's visible injuries upon arrival at the Jail were a swollen wrist and a few "superficial" scrapes on Plaintiff's face. The Defendants aver that they did not know that Plaintiff had suffered a broken wrist. Plaintiff was medically assessed by Jail staff hours after his arrival, received an X ray that revealed a "minimal" wrist fracture, and was treated with, inter alia, a thumb splint.

## II.
### A.

Defendants filed motions for summary judgment seeking qualified immunity. A government official sued under § 1983 is entitled to invoke qualified immunity, which is more than a mere defense to liability; it is immunity from suit itself. Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The doctrine of qualified immunity 'balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from

5

harassment, distraction, and liability when they perform their duties reasonably.'" Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).

The "qualified immunity analysis typically involves two inquiries: (1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015). A "court may address these two questions in the order . . . that will best facilitate the fair and efficient disposition of each case." Estate of Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 898 (4th Cir. 2016) (internal quotation marks omitted). A plaintiff's claim "survives summary judgment, however, only if [the court] answer[s] both questions in the affirmative." Id.

### B.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952

6

F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by the motion for summary judgment. See Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009) (noting that a plaintiff may not amend a complaint through argument in a brief opposing summary judgment); Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (same).

### III.

Plaintiff argues that Detective Coffin and Officer McCall's use of a Taser and the force allegedly used by Detective Johnson to break his wrist violated his civil rights. A claim that a law enforcement officer used excessive force in the context of an arrest is analyzed under the "objectively unreasonable" standard of the Fourth Amendment.[4] Graham v. Connor, 490 U.S. 386, 394 (1989). "Because police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving, the facts must be evaluated from the perspective of a reasonable officer at the scene, and the use of hindsight must be avoided[.]" Waterman v. Batton, 393 F.3d 471, 476-77 (4th Cir. 2005) (internal quotation marks omitted). The subjective intent or motivation of an officer is irrelevant at this step. Graham, 490 U.S. at 399.

"To gauge objective reasonableness, a court examines only the actions at issue and measures them against what a reasonable police officer would do under the circumstances."

---

[4] I previously analyzed Plaintiff's Taser allegations under the Fourteenth Amendment based on his allegations that he was Tased after he was handcuffed and laying on the ground posing no threat. However, the video now establishes that Plaintiff was Tased while being arrested and before being handcuffed. Thus, the Fourth Amendment, rather than the Fourteenth, governs the claim.

7

Rowland v. Perry, 41 F.3d 167, 172 (4th Cir. 1994). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." Bell v. Wolfish, 441 U.S. 520, 559 (1979). However, courts must examine the severity of the crime at issue; the extent to which "the suspect poses an immediate threat to the safety of the officers or others"; and "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Smith, 781 F.3d at 101 (quoting Graham, 490 U.S. at 396). "To properly consider the reasonableness of the force employed we must view it in full context, with an eye toward the proportionality of the force in light of all the circumstances." Id. (internal quotation marks omitted). "Artificial divisions in the sequence of events do not aid a court's evaluation of objective reasonableness." Id. (quoting Waterman, 393 F.3d at 481).

### A.

I find that Officer McCall and Detective Coffin are entitled to qualified immunity and summary judgment because the Taser was a reasonable use of force under the circumstances. Officers had been informed that Plaintiff may have been involved with a shooting and had been distributing crack cocaine. Plaintiff tried to flee, would not comply with officers' orders to exit the vehicle, and reached for something hidden in his waistband when officers tried to take him out of the car. Detective Jones had to drag Plaintiff out of the car and quickly pin Plaintiff to the ground to secure Plaintiff's arms from whatever was hidden in his waistband. Plaintiff continued to struggle until the Taser was deployed, which ultimately allowed the officers to secure handcuffs. The record clearly refutes Plaintiff's allegation that he was handcuffed and calmly laying on the ground when he was Tased. See Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008) ("[W]here, as here, the record contains an unchallenged videotape capturing the events in

8

question, we must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape.").

> If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified using more force than in fact was needed. The circumstances surrounding the arrest gave the officers no reason to believe Brown would be amenable to their requests. If courts refused to permit the use of proportionate force in these circumstances, we would be inviting any suspect who is unhappy about an arrest to resist that arrest in the hopes that the officers will simply desist rather than risk liability.

Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir. 2002).

Based on the circumstances of the arrest — Plaintiff's attempt to flee while surrounded by traffic, continued resistance, and movements toward something hidden in his waistband — Officer McCall and Detective Coffin were reasonable and justified in believing the Taser was a necessary use of force. Accordingly, McCall and Coffin are entitled to qualified immunity and summary judgment.

**B.**

Plaintiff alleges that Detective Johnson twisted his wrist until it broke while he was lying face down, was not a threat to officers, and was not resisting their attempts to arrest him. Detective Johnson avers he never touched Plaintiff's wrist and argues that the dashcam footage blatantly contradicts Plaintiff's allegation.

The video does not blatantly contradict the allegation to such extent that I may discredit Plaintiff's allegation. Specifically, segments of the dashcam footage at approximately 5:40-6:04, 7:20, and 8:40-9:02 show Detective Johnson reaching down and forcefully manipulating some aspect of Plaintiff's body. While Detective Johnson argues that he was restraining Plaintiff's legs, the positions of the officers support the inference that Plaintiff's wrist was within reach of

9

Detective Johnson's hands. Consequently, I may not discredit Plaintiff's allegations against Detective Johnson based on the dashcam footage alone.

Detective Johnson alternatively argues that whatever force used to fracture Plaintiff's wrist was clearly necessary to restrain him. Viewing inferences in a light most favorable to Plaintiff, the video does not establish that Plaintiff was resisting the arrest during those three segments to such extent to warrant breaking a wrist.

The "force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated." Waterman, 393 F.3d at 481. Unlike the use of the Taser, the situation was much less dynamic than the first fifteen seconds after Plaintiff was pulled out of the car and Tased. During each of the three segments, no less than four officers had Plaintiff pinned face-down to the ground when Detective Johnson allegedly reached down and twisted Plaintiff's handcuffed wrist to the extent it fractured. Plaintiff and the scene was secured enough during the footage between 5:40-6:04 that Detectives Seitz and Jones' calmly walked around Plaintiff and the four other officers, got into their SUV, and drove away. Notably, nothing in the record establishes a relationship between Detective Johnson's alleged use of force and Plaintiff almost slipping out of one of the handcuffs. Furthermore, it was clearly established before December 19, 2013, that an officer cannot use unnecessary, gratuitous, and disproportionate force to subdue an unarmed subject who posed no threat to the officer's safety. See, e.g., Meyers v. Baltimore Cty., Md., 713 F.3d 723, 734-35 (4th Cir. 2013).

I am not permitted to weigh credibility on a motion for summary judgment and find, for example, Plaintiff's allegations to be incredible or meritless. Instead, I must view the evidence and inferences therefrom in a light most favorable to him, and I may not resolve disputes of material fact on summary judgment. Consequently, I am constrained at this time to find that

10

disputes of material fact preclude qualified immunity summary judgment. The excessive force claim against Detective Johnson must be resolved by trial.

IV.

Plaintiff alleges that the defendants failed to render medical assistance for his broken wrist. A claim that a government official failed to provide medical treatment to an arrestee is analyzed under the Fourteenth Amendment. The right of an arrestee complaining of inadequate medical care under the Fourteenth Amendment is "at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983). Consequently, a pro se complaint must allege sufficient facts to describe deliberate indifference to the arrestee's serious medical needs. See, e.g., Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Young v. City of Mt. Ranier, 238 F.3d 567, 575 (4th Cir. 2001) (endorsing the use of an Eighth Amendment deliberate indifference standard to adjudicate a Fourteenth Amendment medical claim from a pretrial detainee).

Even after viewing the evidence in a light most favorable to Plaintiff, all of the remaining defendants are entitled to qualified immunity and summary judgment for this claim. Notably, Plaintiff's physical injuries were observed to be merely superficial scrapes and a swollen wrist by the time he arrived at the Jail. Plaintiff does allege in his verified complaint that he informed defendants that his wrist was broken, a fact revealed only by an X ray. Consequently, Plaintiff has not established that any defendant was deliberately indifferent to a serious medical need.

Moreover, the decision to have Plaintiff transported to the Jail without seeing ambulance staff does not shock the conscience. Moments before seeing ambulance staff, Plaintiff was bucking, flailing, screaming, and trying to remove his restraints, and Sgt. Brake determined Plaintiff posed an unacceptable risk to them. Defendants knew that Jail staff would render

11

medical treatment for the apparent, superficial injuries. Accordingly, defendants are entitled to qualified immunity and summary judgment for this claim.

V.

For the foregoing reasons, defendants Wormley, Jones, and Brake's motion for summary judgment is granted. Defendants Johnson, McCall, Seitz, and Coffin's motion for summary judgment is denied as to the excessive force claim against Johnson but granted in all other respects. The remaining excessive force claim against Johnson shall proceed to trial.

ENTER: This 9th day of August, 2016.

*Jackson L. Kiser*
Senior United States District Judge

12

Case 7:14-cv-00576-NKM-RSB   Document 65   Filed 08/09/16   Page 12 of 12   Pageid#: 334